```
                                              FILED
                                      CLERK, U.S. DISTRICT COURT
                                           9/16/25
                                      CENTRAL DISTRICT OF CALIFORNIA
                                      BY:      MRV      DEPUTY
```

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 2:25-cr-00767-SPG |
|---|---|
| Plaintiff, | I N F O R M A T I O N |
| v. | [18 U.S.C. § 1951(a): Conspiracy to Commit Extortion; 18 U.S.C. § 241: Conspiracy Against Rights; 18 U.S.C. §§ 924(d)(1), 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| MICHAEL DAVID COBERG, | |
| Defendant. | |

The Acting United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1. The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police services within Los Angeles County through its thousands of sworn deputies.

2.     Defendant MICHAEL DAVID COBERG, Christopher Michael Cadman ("Cadman"), Eric Chase Saavedra ("Saavedra"), LASD Deputy 4, and LASD Deputy 6 were sworn law enforcement officers employed by the LASD. As LASD deputies, defendant COBERG, Cadman, LASD Deputy 4, and LASD Deputy 6 were subject to an oath of duty and rules of conduct. This oath and these rules prohibited LASD personnel from using their law enforcement status and related equipment for personal use or for non-legitimate law enforcement purposes.

3.     Defendant COBERG was a helicopter pilot assigned to LASD's Aero Bureau. As a helicopter pilot, defendant COBERG did not have an investigatory assignment nor the duties of a detective. Defendant COBERG did not run confidential human sources. Defendant COBERG was only a pilot observer and a helicopter pilot.

4.     Defendant COBERG knew and understood that the Constitution and laws of the United States protect the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

5.     Adam Iza, also known as "The Godfather," "Ahmed Faiq," "Diego," "Diego Facebook," "Tony Brambilla," and "Leo" ("Iza"), was engaged in fraudulent marketing and cryptocurrency schemes and resided in Los Angeles County and Orange County, within the Central District of California.

6.     Saavedra owned and operated a company called Saavedra & Associates LLC ("Saavedra & Associates") that provided private security services for clients and often employed active LASD deputies and law enforcement officers.

7.  Defendant COBERG at first worked one shift for Saavedra & Associates as a private security guard but then obtained his own contract directly with Iza.  Defendant COBERG's contract with Iza allowed defendant COBERG to work as a business partner and advisor as opposed to working security shifts.  Defendant COBERG and Iza were planning to start a business selling anabolic steroids.  Defendant COBERG received at least $20,000 per month in payments from Iza for his services.

8.  Co-Conspirator 2 was a former romantic partner of a victim, Victim R.C.  Co-Conspirator 2 later became romantically involved with Iza in August 2021.

9.  These Introductory Allegations are incorporated into each count of this Information.

COUNT ONE

[18 U.S.C. § 1951(a)]

A. OBJECT OF THE CONSPIRACY

10. Beginning on a date unknown and continuing through in or around December 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant COBERG and Iza, together with others known and unknown, conspired with each other to knowingly and intentionally interfere with commerce by extortion, in violation of Title 18, United States Code, Section 1951(a).

B. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

11. The object of the conspiracy was to be accomplished, in substance, as follows:

   a. Iza would hire active LASD deputies, including defendant COBERG, to act as Iza's personal bodyguards and/or advisors, accompanying him 24 hours per day and seven days per week.

   b. Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers.

   c. The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

   d. Iza would inform the LASD deputies about people with whom he had monetary disputes and obtain the LASD deputies' assistance in gathering information about these individuals, obtaining property from these individuals, and/or retaliating against these individuals.

   e. To coerce an individual who had a monetary dispute with Iza into relinquishing property, Iza would arrange for the

4

individual to travel to Iza's home and be escorted to his office by defendant COBERG and other security guards where defendant COBERG and Iza would confront the individual. Iza would have firearms, including an assault rifle, present and visible to the individual entering his office. While in Iza's office, defendant COBERG would force the individual into complying with Iza's financial demands by identifying himself as active-duty law enforcement and acting like an investigator while interrogating the individual concerning the individual's financial dispute with Iza. Iza would then demand the individual transfer money to Iza and secure its transfer while defendant COBERG oversaw the demand and transfer.

   f.   To ensure the extortion was successful, Iza would video record the transfer and seek to further intimidate the individual by directing the seizure of his passport all while defendant COBERG stood watch over the individual.

   g.   In other efforts to extort an individual with whom he had monetary disputes, Iza would have defendant COBERG escort an individual to Iza's private shooting range in Iza's basement and leave the individual there alone with Iza. Iza would then point a firearm at the individual and demand that the individual transfer money to Iza, which the individual would do.

C.   <u>OVERT ACTS</u>

   12.   On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant COBERG and Iza, together with others known and unknown, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

<u>Overt Act No. 1</u>:   In October 2021, defendant COBERG and Iza discussed a financial dispute between Iza, an Italian individual ("Victim L.A."), and Victim L.A.'s business partner.

<u>Overt Act No. 2</u>:   In October 2021, Iza told defendant COBERG that Iza had been using a pseudonym to communicate with Victim L.A., and that Victim L.A. planned to travel to Los Angeles to discuss the financial dispute.

<u>Overt Act No. 3</u>:   In October 2021, Iza told defendant COBERG that when Victim L.A. arrived at Iza's residence in Bel Air, defendant COBERG should apply pressure on Victim L.A. to resolve the financial dispute.

<u>Overt Act No. 4</u>:   On October 19, 2021, defendant COBERG accompanied other security guards in a black Escalade SUV to pick up Victim L.A. from a hotel and drive Victim L.A. to Iza's residence.

<u>Overt Act No. 5</u>:   On October 19, 2021, defendant COBERG escorted Victim L.A. into Iza's office in Iza's residence.   Inside the office, Iza placed a firearm on the desk.  Iza also displayed an assault rifle, which was placed on the ground near the desk.

<u>Overt Act No. 6</u>:   On October 19, 2021, while inside the office, defendant COBERG interrogated Victim L.A. about the financial dispute and the location of Victim L.A.'s business partner. Defendant COBERG acted as an investigator and told Victim L.A. that he was an active-duty law enforcement officer.

<u>Overt Act No. 7</u>:   On October 19, 2021, while defendant COBERG stood watch over Victim L.A. inside the office, Iza demanded that Victim L.A. transfer funds to a bank account that Iza controlled.

<u>Overt Act No. 8</u>:   On October 19, 2021, while defendant COBERG was inside the office, Iza recorded a video of Victim L.A.

transferring the entire balance of Victim L.A.'s Bank of America account, that is, $127,000, to a bank account that Iza controlled.

Overt Act No. 9:  On October 19, 2021, following the wire transfer, while defendant COBERG stood watch over Victim L.A., Iza directed his security guards to take possession of Victim L.A.'s passport and told the security guards to drive Victim L.A. back to the hotel.

Overt Act No. 10:  On October 20, 2021, Iza directed his security guards to pick up Victim L.A. from the hotel and drive Victim L.A. back to Iza's residence.

Overt Act No. 11:  On October 20, 2021, defendant COBERG continued to interrogate Victim L.A. about the financial dispute and the location of Victim L.A.'s business partner.

Overt Act No. 12:  On October 20, 2021, defendant COBERG escorted Victim L.A. and Iza to a shooting range in the basement of the residence, where defendant COBERG left the two alone.

Overt Act No. 13:  On October 20, 2021, Iza held Victim L.A. at gunpoint inside the shooting range while he demanded that Victim L.A.'s business partner transfer money to Iza.

Overt Act No. 14:  On October 20, 2021, Victim L.A.'s business partner transferred additional funds to Iza.

COUNT TWO

[18 U.S.C. § 241]

A. OBJECT OF THE CONSPIRACY

13. Beginning on a date unknown and continuing through in or around June 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendant COBERG, Iza, and Cadman, together with others known and unknown, conspired and agreed with each other to knowingly and intentionally injure, oppress, threaten, and intimidate persons of the State of California, namely, Victim R.C., in the free exercise and enjoyment of rights secured to them by the Constitution and laws of the United States, that is, the right to be free from unreasonable searches and seizures and the right to be free from deprivation of property without due process of law by one acting under color of law.

B. MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

14. The object of the conspiracy was to be accomplished, in substance, as follows:

    a. Iza would hire active LASD deputies, including defendant COBERG, to act as Iza's personal bodyguards and/or advisors, accompanying him 24 hours per day and seven days per week.

    b. Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers.

    c. Iza would pay $20,000 per month directly to defendant COBERG for his services as a security guard and business partner in an anabolic steroid business venture.

        d.    The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

        e.    Iza would inform the LASD deputies about people with whom he had monetary disputes and obtain the LASD deputies' assistance in gathering information about these individuals, obtaining property from these individuals, and/or retaliating against these individuals.

        f.    To retaliate against an individual with whom Iza had personal and monetary disputes, defendant COBERG, Iza, and Co-Conspirator 2 would arrange for an individual to be set up with illegal drugs and then arrested under false pretenses by law enforcement while Iza filmed the arrest for his personal pleasure and to mock the individual.  Defendant COBERG would call active-duty LASD officers to set up the traffic stop and drive to the scene with Iza to watch the individual be arrested.

C.    <u>OVERT ACTS</u>

    15.  On or about the following dates, in furtherance of the conspiracy, and to accomplish its object, defendant COBERG, Iza, and Cadman, together with others known and unknown, committed and caused to be committed various overt acts within the Central District of California, and elsewhere, including the following:

    <u>Overt Act No. 1</u>:  In August 2021, Iza began communicating regularly with Co-Conspirator 2 who attended a party thrown by Victim R.C., Iza's party planner, at Iza's residence on August 14, 2021.

    <u>Overt Act No. 2</u>:  In September 2021, Iza, Co-Conspirator 2, and defendant COBERG discussed and agreed to a plan whereby they would cause Victim R.C. to be arrested with illegal drugs by law enforcement officers.

<u>Overt Act No. 3</u>:   In late September 2021, during a meeting between Iza, Co-Conspirator 2, and defendant COBERG at Iza's residence, Co-Conspirator 2 contacted Victim R.C., who was in Florida, and encouraged Victim R.C. to return to Los Angeles.

<u>Overt Act No. 4</u>:   In late September 2021, Co-Conspirator 2, with Iza's assistance, purchased a ticket for Victim R.C. to travel from Florida to Los Angeles, where Iza, Co-Conspirator 2, and defendant COBERG planned to have Victim R.C. arrested with illegal drugs, which defendant COBERG emphasized was important to their plan.

<u>Overt Act No. 5</u>:   On September 26, 2021, Iza met Co-Conspirator 2 and supplied Co-Conspirator 2 approximately $800 for Victim R.C. to use to purchase illegal drugs.

<u>Overt Act No. 6</u>:   On September 27, 2021, defendant COBERG communicated with Cadman and LASD Deputy 4, who was on patrol in Paramount, California, and arranged for LASD Deputy 4 to conduct a traffic stop of Co-Conspirator 2's vehicle in Paramount and to arrest Victim R.C.

<u>Overt Act No. 7</u>:   On September 27, 2021, Co-Conspirator 2 drove Victim R.C. to a prearranged location in Paramount that Iza supplied to Co-Conspirator 2.

<u>Overt Act No. 8</u>:   On September 27, 2021, Iza and defendant COBERG drove together to the prearranged location in Paramount to observe Victim R.C.'s arrest.

<u>Overt Act No. 9</u>:   On September 27, 2021, LASD Deputy 4 conducted a traffic stop of Co-Conspirator 2's vehicle at the prearranged location in Paramount.

  Overt Act No. 10:  On September 27, 2021, Iza and/or defendant COBERG took photographs and videos of Victim R.C.'s arrest from inside their vehicle.

  Overt Act No. 11:  On September 27, 2021, during the traffic stop, LASD Deputy 4 searched Co-Conspirator 2's vehicle and found a plastic bag containing suspected cocaine under the front passenger seat, where Victim R.C. had been seated, and two bags containing psilocybin mushrooms inside Victim R.C.'s backpack.

  Overt Act No. 12:  On September 27, 2021, based on the traffic stop and subsequent search of Co-Conspirator 2's vehicle, LASD Deputy 4 caused Victim R.C. to be charged with transportation of a controlled substance and transported Victim R.C. to a local jail.

  Overt Act No. 13:  On September 27, 2021, defendant COBERG sent a text message to Cadman thanking Cadman for facilitating the traffic stop and stating that "the kid enjoyed it," referring to Iza.

  Overt Act No. 14:  On October 1, 2021, Iza sent photographs and text messages to be sent to Victim R.C., including a photograph of Victim R.C.'s arrest in progress, a message stating that "[f]or a drug dealer, you fucked with the wrong people," a photograph of Victim R.C.'s booking photograph, and a message stating "[w]orthless loser.  Congrats on the drug felony arrest."

11

FORFEITURE ALLEGATION ONE

[18 U.S.C. §§ 981(a)(1)(C), 924(d)(1) and 28 U.S.C. § 2461(c)]

1.  Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count One of this Information.

2.  The defendant, if so convicted, shall forfeit to the United States of America the following:

    (a)  All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to any of the offenses;

    (b)  All right, title, and interest in any firearm or ammunition involved in or used in any such offense and

    (c)  To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraphs (a) and (b).

3.  Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2. If so convicted, defendant shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//
//

14

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

BILAL A. ESSAYLI
Acting United States Attorney

*/s/ Joe McNally*

JOSEPH T. MCNALLY
Assistant United States Attorney
Acting Chief, Criminal Division

THOMAS F. RYBARCZYK
Assistant United States Attorney
Chief, Public Corruption and Civil Rights Section

MAXWELL K. COLL
Assistant United States Attorney
Acting Deputy Chief, Terrorism and Export Crimes Section

15