Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  BILAL A. ESSAYLI
   Acting United States Attorney
2  CHRISTINA T. SHAY
   Assistant United States Attorney
3  Chief, Criminal Division
   MAXWELL COLL (Cal. Bar No. 312651)
4  Assistant United States Attorney
   Terrorism and Export Crimes Section
5       1500 United States Courthouse
        312 North Spring Street
6       Los Angeles, California 90012
        Telephone: (213) 894-1785
7       Facsimile: (213) 894-1042
        E-mail:    maxwell.coll@usdoj.gov
8
   Attorneys for Plaintiff
9  UNITED STATES OF AMERICA

```
                           FILED
                  CLERK, U.S. DISTRICT COURT

                     9/16/25

               CENTRAL DISTRICT OF CALIFORNIA
               BY:        MRV         DEPUTY
```

10                 UNITED STATES DISTRICT COURT

11             FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  UNITED STATES OF AMERICA,        No. CR  2:25-cr-00767-SPG

13            Plaintiff,             PLEA AGREEMENT FOR DEFENDANT
                                     MICHAEL DAVID COBERG
14            v.

15  MICHAEL DAVID COBERG,

16            Defendant.

17

18       1.   This constitutes the plea agreement between MICHAEL DAVID

19  COBERG ("defendant") and the United States Attorney's Office for the

20  Central District of California (the "USAO") in the investigation of

21  certain acts committed by defendant in furtherance of a conspiracy

22  against rights under color of law.  This agreement is limited to the

23  USAO and cannot bind any other federal, state, local, or foreign

24  prosecuting, enforcement, administrative, or regulatory authorities.

25                       DEFENDANT'S OBLIGATIONS

26       2.   Defendant agrees to:

27            a.   Give up the right to indictment by a grand jury and,

28  at the earliest opportunity requested by the USAO and provided by the

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1    Court, appear and plead guilty to a two-count Information in the form
2    attached to this agreement as Exhibit A or a substantially similar
3    form, which charges defendant with conspiracy to commit extortion, in
4    violation of 18 U.S.C. § 1951(a) (Count One), and conspiracy against
5    rights, in violation of 18 U.S.C. § 241 (Count Two).
6         b.    Not contest the Factual Basis agreed to in this
7    agreement.
8         c.    Abide by all agreements regarding sentencing contained
9    in this agreement.
10        d.    Appear for all court appearances, surrender as ordered
11    for service of sentence, obey all conditions of any bond, and obey
12    any other ongoing court order in this matter.
13        e.    Not commit any crime; however, offenses that would be
14    excluded for sentencing purposes under United States Sentencing
15    Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not
16    within the scope of this agreement.
17        f.    Be truthful at all times with the United States
18    Probation and Pretrial Services Office and the Court.
19        g.    Pay the applicable special assessments at or before
20    the time of sentencing unless defendant has demonstrated a lack of
21    ability to pay such assessments.

THE USAO'S OBLIGATIONS

23    3.    The USAO agrees to:
24        a.    Not contest the Factual Basis agreed to in this
25    agreement.
26        b.    Abide by all agreements regarding sentencing contained
27    in this agreement.
28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

c.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

d.   Except for criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not further criminally prosecute defendant for violation of 18 U.S.C. § 924(c) arising out of defendant's conduct described in the agreed-to factual basis set forth in paragraph 15 below. Defendant understands that the USAO is free to criminally prosecute defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.  Defendant agrees that at the time of sentencing the Court may consider the uncharged conduct in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed after consideration of the Sentencing Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

<u>NATURE OF THE OFFENSES</u>

4.   Defendant understands that for defendant to be guilty of the crime charged in Count One of the Information, that is, conspiracy to commit extortion, in violation of Title 18, United States Code, Section 1951(a), the following must be true: first, beginning on a date unknown and ending on or about another date, there was an agreement between two or more persons to commit extortion; and second, the defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose.  The

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  elements of extortion are: first, defendant induced or intended to

2  induce the victim to part with property by the wrongful use of actual

3  or threatened force, violence, or fear; second, defendant obtained

4  the property with the victim's consent; third, defendant acted with

5  intent to obtain the property; and fourth, commerce from one state to

6  another was affected in some way.  Conduct affects interstate

7  commerce if it in any way involves, interferes with, changes, or

8  alters the movement or transportation or flow of goods, merchandise,

9  money, or other property in commerce between or among the states or

10 between the United States and a foreign country.  The effect can be

11 minimal.  It is not necessary for the government to prove that the

12 defendant knew or intended that his conduct would affect commerce; it

13 must prove only that the natural consequences of his conduct affected

14 commerce in some way.

15      5.   Defendant understands that for defendant to be guilty of

16 the crime charged in Count Two of the Information, that is,

17 conspiracy against rights, in violation of Title 18, United States

18 Code, Section 241, the following must be true: (1) there was an

19 agreement between two or more persons to injure, oppress, threaten,

20 or intimidate a person in the free exercise or enjoyment of his or

21 her rights secured by the Constitution and laws of the United States;

22 here, the right to be free from unreasonable searches and seizures

23 and the right to be free from deprivation of property without due

24 process of law by one acting under color of law; (2) defendant

25 knowingly became a member of the conspiracy with the intent to

26 further the conspiracy; and (3) the victim was present in the United

27 States.

28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1                    <u>PENALTIES AND RESTITUTION</u>

2        6.    Defendant understands that the statutory maximum sentence

3  that the Court can impose for a violation of Title 18, United States

4  Code, Section 1951(a) (Count One) is: 20 years' imprisonment; a five-

5  year period of supervised release; a fine of $250,000 or twice the

6  gross gain or gross loss resulting from the offense, whichever is

7  greatest; and a mandatory special assessment of $100.

8        7.    Defendant understands that the statutory maximum sentence

9  that the Court can impose for a violation of Title 18, United States

10 Code, Section 241 (Count Two) is: 10 years' imprisonment; a three-

11 year period of supervised release; a fine of $250,000 or twice the

12 gross gain or gross loss resulting from the offense, whichever is

13 greatest; and a mandatory special assessment of $100.

14       8.    Defendant understands, therefore, that the total maximum

15 sentence for all offenses to which defendant is pleading guilty is:

16 30 years' imprisonment; a five-year period of supervised release; a

17 fine of $500,000 or twice the gross gain or gross loss resulting from

18 the offenses, whichever is greatest; and a mandatory special

19 assessment of $200.

20       9.    Defendant understands that defendant will be required to

21 pay full restitution to the victim(s) of the offenses to which

22 defendant is pleading guilty.  Defendant agrees that, in return for

23 the USAO's compliance with its obligations under this agreement, the

24 Court may order restitution to persons other than the victim(s) of

25 the offenses to which defendant is pleading guilty and in amounts

26 greater than those alleged in the counts to which defendant is

27 pleading guilty.  In particular, defendant agrees that the Court may

28 order restitution to any victim of any of the following for any

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  losses suffered by that victim as a result: any relevant conduct, as

2  defined in U.S.S.G. § 1B1.3, in connection with the offenses to which

3  defendant is pleading guilty.  The parties currently believe that the

4  applicable amount of restitution is approximately $127,000, but

5  recognize and agree that this amount could change based on facts that

6  come to the attention of the parties prior to sentencing.

7       10.  Defendant understands that supervised release is a period

8  of time following imprisonment during which defendant will be subject

9  to various restrictions and requirements.  Defendant understands that

10  if defendant violates one or more of the conditions of any supervised

11  release imposed, defendant may be returned to prison for all or part

12  of the term of supervised release authorized by statute for the

13  offense that resulted in the term of supervised release, which could

14  result in defendant serving a total term of imprisonment greater than

15  the statutory maximum stated above.

16      11.  Defendant understands that, by pleading guilty, defendant

17  may be giving up valuable government benefits and valuable civic

18  rights, such as the right to vote, the right to possess a firearm,

19  the right to hold office, and the right to serve on a jury.

20  Defendant understands that he is pleading guilty to a felony and that

21  it is a federal crime for a convicted felon to possess a firearm or

22  ammunition.  Defendant understands that the convictions in this case

23  may also subject defendant to various other collateral consequences,

24  including but not limited to revocation of probation, parole, or

25  supervised release in another case and suspension or revocation of a

26  professional license.  Defendant understands that unanticipated

27  collateral consequences will not serve as grounds to withdraw

28  defendant's guilty pleas.

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1    12.  Defendant and his counsel have discussed the fact that, and

2  defendant understands that, if defendant is not a United States

3  citizen, the convictions in this case makes it practically inevitable

4  and a virtual certainty that defendant will be removed or deported

5  from the United States.  Defendant may also be denied United States

6  citizenship and admission to the United States in the future.

7  Defendant understands that while there may be arguments that

8  defendant can raise in immigration proceedings to avoid or delay

9  removal, removal is presumptively mandatory and a virtual certainty

10  in this case.  Defendant further understands that removal and

11  immigration consequences are the subject of a separate proceeding and

12  that no one, including his attorney or the Court, can predict to an

13  absolute certainty the effect of his convictions on his immigration

14  status.  Defendant nevertheless affirms that he wants to plead guilty

15  regardless of any immigration consequences that his pleas may entail,

16  even if the consequence is automatic removal from the United States.

17                              FACTUAL BASIS

18    13.  Defendant admits that defendant is, in fact, guilty of the

19  offenses to which defendant is agreeing to plead guilty.  Defendant

20  and the USAO agree to the statement of facts provided below and agree

21  that this statement of facts is sufficient to support pleas of guilty

22  to the charges described in this agreement and to establish the

23  Sentencing Guidelines factors set forth in paragraph 155 below but is

24  not meant to be a complete recitation of all facts relevant to the

25  underlying criminal conduct or all facts known to either party that

26  relate to that conduct.

27    At all times relevant to this Factual Basis, defendant, Eric

28  Chase Saavedra ("Saavedra"), Christopher Cadman ("Cadman"), LASD

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1    Deputy 4, and LASD Deputy 6 were sworn law enforcement officers

2    employed by the Los Angeles County Sheriff's Department ("LASD").  As

3    LASD deputies, defendant, Saavedra, Cadman, LASD Deputy 4, and LASD

4    Deputy 6 were subject to an oath of duty and rules of conduct.  This

5    oath and these rules prohibited LASD personnel from using their law

6    enforcement status and related equipment for personal use or for non-

7    legitimate law enforcement purposes.

8         Defendant was a helicopter pilot assigned to LASD's Aero Bureau.

9    As a helicopter pilot, defendant did not have an investigatory

10   assignment nor the duties of a detective.  Defendant did not run

11   confidential human sources.  Defendant was only a pilot observer and

12   a helicopter pilot.  Defendant knew and understood that the

13   Constitution and laws of the United States protect the right to be

14   free from unreasonable searches and seizures and the right to be free

15   from deprivation of property without due process of law by one acting

16   under color of law.

17        Defendant worked as a private security guard and business

18   partner for Adam Iza ("Iza"), also known as ("aka") "The Godfather,"

19   aka "Ahmed Faiq," aka "Diego," aka "Diego Facebook," aka "Tony

20   Brambilla," aka "Leo," and received cash payments in return for his

21   services.  At the time, Iza was engaged in fraudulent marketing and

22   cryptocurrency schemes.  Defendant received at least $20,000 per

23   month in payments from Iza for his services.

24        Saavedra owned and operated a company called Saavedra &

25   Associates LLC ("Saavedra & Associates") that provided private

26   security services for clients and often employed active LASD deputies

27   and law enforcement officers.  Private security guards working for

28   Saavedra & Associates accompanied Iza 24 hours per day, seven days a

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  week during which they would often carry firearms and/or brandish
2  their badges while accompanying Iza.  At first, defendant worked one
3  shift for Saavedra & Associates as a private security guard in August
4  2021.  Soon thereafter, however, defendant obtained his own contract
5  with Iza.  Defendant's personal contract with Iza allowed defendant
6  to work as a business partner and advisor as opposed to a security
7  guard.  Defendant and Iza were planning to start a business selling
8  steroids.

9  ***Defendant Organizes Traffic Stop and Arrest of Victim R.C.***

10      In August 2021, while working for Iza, defendant learned of a
11  dispute between Iza and Victim R.C., which started because Iza's
12  displeasure with a party that Victim R.C. planned at Iza's mansion in
13  Bel Air in August 2021.  Around the same time, defendant also learned
14  that Iza, Cadman, and LASD Deputy 6 forced Victim R.C. at gunpoint to
15  transfer $25,000 from Victim R.C.'s bank account to a bank account
16  that Iza controlled.

17      After that incident, in September 2021, defendant conspired with
18  Iza and Co-Conspirator 2 to lure Victim R.C. from Miami to Los
19  Angeles to set up Victim R.C. and cause him to be arrested with
20  drugs.  Defendant met with Iza and Co-Conspirator 2 in Iza's office
21  in his Bel Air mansion.  During this meeting, defendant and his co-
22  conspirators discussed a plan where Co-Conspirator 2 would call
23  Victim R.C. and pretend to be interested in pursuing a romantic
24  relationship with Victim R.C.  Co-Conspirator 2 would convince Victim
25  R.C. to fly to Los Angeles to meet with her to use drugs together and
26  have a romantic relationship.  Co-Conspirator 2 would purchase the
27  plane ticket for Victim R.C., pick up Victim R.C. at LAX, drive
28  Victim R.C. to obtain drugs, and then travel to a set location in Los

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  Angeles where an LASD officer would make the traffic stop and arrest.
2  During this meeting in Iza's office, defendant listened to Co-
3  Conspirator 2 speak with Victim R.C. on speakerphone and advised Co-
4  Conspirator 2 about what to say to Victim R.C.  Defendant emphasized
5  the importance of having drugs in Victim R.C.'s possession at the
6  time of the arrest.

7      On or about September 26 and September 27, 2021, defendant, Iza,
8  and Co-Conspirator 2 executed the plan to arrest Victim R.C. with
9  drugs.  Co-Conspirator 2 picked up Victim R.C. at LAX in her white
10  Telsa vehicle and provided Victim R.C. with cash to purchase drugs.
11  Iza met Co-Conspirator 2 and supplied Co-Conspirator 2 approximately
12  $800 for Victim R.C. to use to purchase illegal drugs.  Co-
13  Conspirator 2 drove to an address in Paramount, California, where
14  defendant organized the traffic stop.  Defendant called Cadman (a
15  deputy at the Lakewood Station), asked him to conduct the traffic
16  stop, and arrest Victim R.C., the victim of the August 2021 incident
17  in which Cadman and LASD Deputy 6 helped Iza force the transfer of
18  $25,000 at gunpoint.  Defendant and Cadman had previously discussed
19  the plan to arrest Victim R.C.  Defendant told Cadman that there were
20  drugs inside the white Tesla.  Cadman informed defendant that Cadman
21  was not working patrol that day but said that LASD Deputy 4 was
22  working patrol and could conduct the traffic stop.

23      Defendant spoke with LASD Deputy 4 and made several false
24  statements.  Defendant told LASD Deputy 4 that defendant had an
25  ongoing investigation involving a confidential informant who was
26  driving a white Tesla with an individual who had an outstanding
27  warrant for his arrest.  Defendant told LASD Deputy 4 that there was

28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1   reason to suspect the individual with the warrant had drugs in the

2   car.

3       At the time defendant made these statements, defendant knew that

4   Co-Conspirator 2 was not a confidential informant, he was not a

5   detective, and he did not run confidential human sources.  While

6   Victim R.C. did have an outstanding warrant for his arrest, defendant

7   did not tell LASD Deputy 4 that (1) the target of the arrest was an

8   adversary of his private client; (2) that defendant was receiving

9   substantial financial payments in exchange for his services,

10  including setting up this arrest; and (3) that defendant had

11  conspired with others to have drugs inside the vehicle at the time of

12  the traffic stop.

13      On September 27, 2021, LASD Deputy 4 conducted the traffic stop.

14  During the traffic stop, LASD Deputy 4 searched Co-Conspirator 2's

15  vehicle and found a plastic bag containing suspected cocaine under

16  the front passenger seat, where Victim R.C. had been seated, and two

17  bags containing psilocybin mushrooms inside Victim R.C.'s backpack.

18  Based on the traffic stop and subsequent search of Co-Conspirator 2's

19  vehicle, LASD Deputy 4 caused Victim R.C. to be charged with

20  transportation of a controlled substance, arrested him, and took

21  Victim R.C. to a local jail.

22      Defendant drove to the scene of the arrest in a black Escalade

23  SUV with Iza in the back passenger seat.  Defendant slowly drove past

24  the traffic stop with the window rolled down so that Iza could look

25  at Victim R.C. from the car as Victim R.C. was being arrested.

26  Defendant then drove to a gas station across the street from the

27  traffic stop.  From the gas station, defendant and Iza watched the

28  arrest unfold, and Iza took videos and photographs of the arrest.

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1    After the arrest, defendant sent a text message to Cadman

2   thanking Cadman for facilitating the traffic stop and stating that

3   "the kid enjoyed it," which was a reference to Iza.  Iza sent

4   photographs and text messages to Victim R.C., including a photograph

5   of Victim R.C.'s arrest in progress, a message stating that "[f]or a

6   drug dealer, you fucked with the wrong people", a photograph of

7   Victim R.C.'s booking photograph, and a message stating "[w]orthless

8   loser.  Congrats on the drug felony arrest."

9   **_Defendant Participates in the Extortion of Victim L.A._**

10    In October 2021, defendant conspired with Iza to extort at least

11   $127,000 from Victim L.A.  Defendant understood that Iza had a

12   financial dispute with an Italian individual Victim L.A. and Victim

13   L.A.'s business partner.  Iza told defendant that Iza had been using

14   a pseudonym to communicate with Victim L.A., and that Victim L.A.

15   planned to travel to Los Angeles to discuss the financial dispute.

16   Iza told defendant that when Victim L.A. arrived at his Bel Air

17   mansion, Iza would reveal himself as Adam Iza, and defendant should

18   apply pressure to resolve the financial dispute.  Defendant agreed to

19   participate in the conspiracy and took several steps to fulfill the

20   plan.

21    On or about October 19, 2021, Victim L.A. flew from Florida to

22   California and stayed in a hotel in West Hollywood.  Defendant

23   accompanied other security guards to the West Hollywood hotel in a

24   black Escalade SUV and picked up Victim L.A. from the hotel.

25   Defendant and the other security guards drove Victim L.A. to Iza's

26   Bel Air mansion.

27    At the mansion, Victim L.A. was brought into the office.

28   Defendant and Iza were present inside the office.  Iza placed the

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  handgun on the desk.  Iza also displayed an assault rifle, which was

2  placed on the ground near the desk.  Defendant questioned Victim L.A.

3  about the financial dispute and the location of Victim L.A.'s

4  business partner.  Defendant acted as an investigator and told Victim

5  L.A. that he was an active-duty law enforcement officer.  While

6  defendant was inside the office, Iza demanded that Victim L.A.

7  transfer funds to a bank account that Iza controlled.  While

8  defendant was inside the office, Iza recorded a video of Victim L.A.

9  transferring the entire balance of Victim L.A.'s Bank of America

10 account ($127,000) to a bank account that Iza controlled.  The wire

11 transfer was executed using a server in Richardson, Texas, and thus

12 affected interstate commerce.  Following the wire transfer, while

13 defendant was inside the office, Iza took possession of Victim L.A.'s

14 passport, took a photograph of Victim L.A.'s girlfriend, and directed

15 security guards to drive Victim L.A. back to the hotel.

16      The following day, Iza's security guards picked up Victim L.A.

17 from the hotel and drove Victim L.A. back to the Bel Air mansion

18 where defendant was present again.  On the second day, defendant was

19 inside the office with Iza and Victim L.A. discussing the financial

20 dispute and the location of Victim L.A.'s business partner.

21 Defendant escorted Victim L.A. and Iza to a shooting range in the

22 basement of the mansion.  Defendant left Iza and Victim L.A. alone in

23 the shooting range.  Inside the shooting range, Iza held Victim L.A.

24 at gunpoint.  Iza recorded two videos of Victim L.A. in the shooting

25 range, including one video in which Iza holds Victim L.A. at gunpoint

26 and another in which Victim L.A. is audibly crying.  Victim L.A. was

27 able to connect with his business partner, who transferred more funds

28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  to Iza.  Later that night, after the transfer of funds, defendant

2  drove Victim L.A. back to the hotel in West Hollywood.

3                          SENTENCING FACTORS

4      14.  Defendant understands that in determining defendant's

5  sentence the Court is required to calculate the applicable Sentencing

6  Guidelines range and to consider that range, possible departures

7  under the Sentencing Guidelines, and the other sentencing factors set

8  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

9  Sentencing Guidelines are advisory only, that defendant cannot have

10 any expectation of receiving a sentence within the calculated

11 Sentencing Guidelines range, and that after considering the

12 Sentencing Guidelines and the other § 3553(a) factors, the Court will

13 be free to exercise its discretion to impose any sentence it finds

14 appropriate up to the maximum set by statute for the crimes of

15 conviction.

16     15.  Defendant and the USAO agree to the following applicable

17 Sentencing Guidelines factors:

18     **Count One (18 U.S.C. § 1951(a))**

19     Base Offense Level:              18          U.S.S.G. § 2B3.2(a)

20     Amount Demanded or Lost
       Exceeded $95,000                 +2          U.S.S.G. § 2B3.2(b)(2)
21                                                  U.S.S.G. § 2B3.1(b)(7)(C)

22

23     **Count Two (18 U.S.C. § 241)**

       Base Offense Level:              12          U.S.S.G. § 2H1.1(a)(2)
24
       Defendant was a public           +6          U.S.S.G. § 2H1.1(b)(1)
25     official at the time of the
       offense; offense was
26     committed under color of law:

27

28

                                   14

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1   Defendant and the USAO reserve the right to argue that additional
2   specific offense characteristics, adjustments, and departures under
3   the Sentencing Guidelines are appropriate.  This includes the USAO's
4   right to argue that a two-level enhancement applies for an express or
5   implied threat of bodily injury or kidnapping under U.S.S.G.
6   § 2B3.2(b)(1), a five-level enhancement applies for possession of a
7   firearm under U.S.S.G. § 2B3.2(b)(3), and an upward adjustment
8   applies under the grouping rules provided for in U.S.S.G. § 3D1.4.

9       16.  Defendant understands that there is no agreement as to
10  defendant's criminal history or criminal history category.

11      17.  Defendant and the USAO reserve the right to argue for a
12  sentence outside the sentencing range established by the Sentencing
13  Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1),
14  (a)(2), (a)(3), (a)(6), and (a)(7).

15              <u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

16      18.  Defendant understands that by pleading guilty, defendant
17  gives up the following rights:

18          a.  The right to persist in a plea of not guilty.

19          b.  The right to a speedy and public trial by jury.

20          c.  The right to be represented by counsel -- and if
21  necessary have the Court appoint counsel -- at trial.  Defendant
22  understands, however, that, defendant retains the right to be
23  represented by counsel -- and if necessary have the Court appoint
24  counsel -- at every other stage of the proceeding.

25          d.  The right to be presumed innocent and to have the
26  burden of proof placed on the government to prove defendant guilty
27  beyond a reasonable doubt.

28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1        e.  The right to confront and cross-examine witnesses

2    against defendant.

3        f.  The right to testify and to present evidence in

4    opposition to the charges, including the right to compel the

5    attendance of witnesses to testify.

6        g.  The right not to be compelled to testify, and, if

7    defendant chose not to testify or present evidence, to have that

8    choice not be used against defendant.

9        h.  Any and all rights to pursue any affirmative defenses,

10    Fourth Amendment or Fifth Amendment claims, and other pretrial

11    motions that have been filed or could be filed.

12    <u>WAIVER OF APPEAL OF CONVICTION</u>

13    19.  Defendant understands that, with the exception of an appeal

14    based on a claim that defendant's guilty pleas were involuntary, by

15    pleading guilty defendant is waiving and giving up any right to

16    appeal defendant's convictions on the offenses to which defendant is

17    pleading guilty.  Defendant understands that this waiver includes,

18    but is not limited to, arguments that the statutes to which defendant

19    is pleading guilty are unconstitutional, and any and all claims that

20    the statement of facts provided herein is insufficient to support

21    defendant's pleas of guilty.

22    <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

23    20.  Defendant agrees that, provided the Court imposes a total

24    term of imprisonment on all counts of conviction of no more than 63

25    months, defendant gives up the right to appeal all of the following:

26    (a) the procedures and calculations used to determine and impose any

27    portion of the sentence; (b) the term of imprisonment imposed by the

28    Court; (c) the fine imposed by the Court, provided it is within the

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1    statutory maximum; (d) to the extent permitted by law, the

2    constitutionality or legality of defendant's sentence, provided it is

3    within the statutory maximum; (e) the amount and terms of any

4    restitution order, provided it requires payment of no more than

5    $127,000; (f) the term of probation or supervised release imposed by

6    the Court, provided it is within the statutory maximum; and (g) any

7    of the following conditions of probation or supervised release

8    imposed by the Court: the conditions set forth in Second Amended

9    General Order 20-04 of this Court; the drug testing conditions

10   mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and

11   drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

12       21.   Defendant also gives up any right to bring a post-

13   conviction collateral attack on the convictions or sentence,

14   including any order of restitution, except a post-conviction

15   collateral attack based on a claim of ineffective assistance of

16   counsel or an explicitly retroactive change in the applicable

17   Sentencing Guidelines, sentencing statutes, or statutes of

18   conviction.  Defendant understands that this waiver includes, but is

19   not limited to, arguments that the statutes to which defendant is

20   pleading guilty are unconstitutional, that newly discovered evidence

21   purportedly supports defendant's innocence, and any and all claims

22   that the Factual Basis provided herein is insufficient to support

23   defendant's pleas of guilty.

24       22.   The USAO agrees that, provided (a) all portions of the

25   sentence are at or below the statutory maximum specified above and

26   (b) the Court imposes a term of imprisonment of no less than 51

27   months, the USAO gives up its right to appeal any portion of the

28   sentence, with the exception that the USAO reserves the right to

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  appeal the following: the amount of restitution ordered if that

2  amount is less than $127,000.

3        WAIVER OF RIGHTS CONCERNING PLEA COLLOQUY AND FACTUAL BASIS

4        23.  Defendant agrees that: (i) any statements made by

5  defendant, under oath, at the guilty plea hearing; (ii) the agreed to

6  factual basis statement in this agreement; and (iii) any evidence

7  derived from such statements, shall be admissible against defendant

8  in any action against defendant, and defendant waives and gives up

9  any claim under the United States Constitution, any statute, Rule 410

10 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of

11 Criminal Procedure, or any other federal rule, that the statements or

12 any evidence derived from the statements should be suppressed or are

13 inadmissible.

14      Defendant further agrees that this paragraph of the agreement is

15 severable.  Thus, defendant's waivers are binding and effective even

16 if, subsequent to defendant's signing this agreement, defendant

17 declines to plead guilty, the Court declines to accept his guilty

18 plea, or, if this agreement is of the type described in Federal Rule

19 of Criminal Procedure 11(c)(1)(A) or (c)(1)(C), the Court rejects

20 this agreement.  Defendant also agrees that his waivers are binding

21 and effective even if some other portion of this agreement is found

22 to be invalid by this Court or the Ninth Circuit.

23            RESULT OF WITHDRAWAL OF GUILTY PLEA

24      24.  Defendant agrees that if, after entering guilty pleas

25 pursuant to this agreement, defendant seeks to withdraw and succeeds

26 in withdrawing defendant's guilty pleas on any basis other than a

27 claim and finding that entry into this plea agreement was

28 involuntary, then (a) the USAO will be relieved of all of its

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  obligations under this agreement; and (b) should the USAO choose to

2  pursue any charge that was either dismissed or not filed as a result

3  of this agreement, then (i) any applicable statute of limitations

4  will be tolled between the date of defendant's signing of this

5  agreement and the filing commencing any such action; and

6  (ii) defendant waives and gives up all defenses based on the statute

7  of limitations, any claim of pre-indictment delay, or any speedy

8  trial claim with respect to any such action, except to the extent

9  that such defenses existed as of the date of defendant's signing this

10  agreement.

11                    <u>EFFECTIVE DATE OF AGREEMENT</u>

12      25.  This agreement is effective upon signature and execution of

13  all required certifications by defendant, defendant's counsel, and an

14  Assistant United States Attorney.

15                      <u>BREACH OF AGREEMENT</u>

16      26.  Defendant agrees that if defendant, at any time after the

17  signature of this agreement and execution of all required

18  certifications by defendant, defendant's counsel, and an Assistant

19  United States Attorney, knowingly violates or fails to perform any of

20  defendant's obligations under this agreement ("a breach"), the USAO

21  may declare this agreement breached.  All of defendant's obligations

22  are material, a single breach of this agreement is sufficient for the

23  USAO to declare a breach, and defendant shall not be deemed to have

24  cured a breach without the express agreement of the USAO in writing.

25  If the USAO declares this agreement breached, and the Court finds

26  such a breach to have occurred, then: (a) if defendant has previously

27  entered guilty pleas pursuant to this agreement, defendant will not

28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1  be able to withdraw the guilty pleas, and (b) the USAO will be

2  relieved of all its obligations under this agreement.

3      27.  Following the Court's finding of a knowing breach of this

4  agreement by defendant, should the USAO choose to pursue any charge

5  that was either dismissed or not filed as a result of this agreement,

6  then:

7          a.  Defendant agrees that any applicable statute of

8  limitations is tolled between the date of defendant's signing of this

9  agreement and the filing commencing any such action.

10         b.  Defendant waives and gives up all defenses based on

11  the statute of limitations, any claim of pre-indictment delay, or any

12  speedy trial claim with respect to any such action, except to the

13  extent that such defenses existed as of the date of defendant's

14  signing this agreement.

15      COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

16              OFFICE NOT PARTIES

17      28.  Defendant understands that the Court and the United States

18  Probation and Pretrial Services Office are not parties to this

19  agreement and need not accept any of the USAO's sentencing

20  recommendations or the parties' agreements to facts or sentencing

21  factors.

22      29.  Defendant understands that both defendant and the USAO are

23  free to: (a) supplement the Factual Basis by supplying relevant

24  information to the United States Probation and Pretrial Services

25  Office and the Court, (b) correct any and all factual misstatements

26  relating to the Court's Sentencing Guidelines calculations and

27  determination of sentence, and (c) argue on appeal and collateral

28  review that the Court's Sentencing Guidelines calculations and the

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1   sentence it chooses to impose are not error, although each party

2   agrees to maintain its view that the calculations in paragraph 15 are

3   consistent with the facts of this case. While this paragraph permits

4   both the USAO and defendant to submit full and complete factual

5   information to the United States Probation and Pretrial Services

6   Office and the Court, even if that factual information may be viewed

7   as inconsistent with the agreed upon Factual Basis in this agreement,

8   this paragraph does not affect defendant's and the USAO's obligations

9   not to contest the Factual Basis agreed to in this agreement.

10      30.  Defendant understands that even if the Court ignores any

11  sentencing recommendation, finds facts or reaches conclusions

12  different from those agreed to, and/or imposes any sentence up to the

13  maximum established by statute, defendant cannot, for that reason,

14  withdraw defendant's guilty pleas, and defendant will remain bound to

15  fulfill all defendant's obligations under this agreement.  Defendant

16  understands that no one -- not the prosecutor, defendant's attorney,

17  or the Court -- can make a binding prediction or promise regarding

18  the sentence defendant will receive, except that it will be within

19  the statutory maximum.

20                       NO ADDITIONAL AGREEMENTS

21      31.  Defendant understands that, except as set forth herein,

22  there are no promises, understandings, or agreements between the USAO

23  and defendant or defendant's attorney, and that no additional

24  promise, understanding, or agreement may be entered into unless in a

25  writing signed by all parties or on the record in court.

26  //

27  //

28  //

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1        <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2        32.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   BILAL A. ESSAYLI
    Acting United States Attorney
9
                                        September 16, 2025
10
    _____             _____
    MAXWELL K. COLL                      Date
11  Assistant United States Attorney
    Terrorism and Export Crimes Section
12

13  ┌─DocuSigned by:

14  _____             9/10/2025
    MICHAEL DAVID COBERG                 _____
15  Defendant                           Date

16

17
                /s/ Tom Yu              09/10/2025
18  _____             _____
    TOM YU                              Date
19  EDWARD ROBINSON
    BRIAN ROBINSON
20  Attorneys for Defendant
    MICHAEL DAVID COBERG

21

22

23

24

25

26

27

28

                              22

1             <u>CERTIFICATION OF DEFENDANT</u>

2     I have read this agreement in its entirety. I have had enough

3 time to review and consider this agreement, and I have carefully and

4 thoroughly discussed every part of it with my attorney. I understand

5 the terms of this agreement, and I voluntarily agree to those terms.

6 I have discussed the evidence with my attorney, and my attorney has

7 advised me of my rights, of possible pretrial motions that might be

8 filed, of possible defenses that might be asserted either prior to or

9 at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a),

10 of relevant Sentencing Guidelines provisions, and of the consequences

11 of entering into this agreement. No promises, inducements, or

12 representations of any kind have been made to me other than those

13 contained in this agreement. No one has threatened or forced me in

14 any way to enter into this agreement. I am satisfied with the

15 representation of my attorney in this matter, and I am pleading

16 guilty because I am guilty of the charges and wish to take advantage

17 of the promises set forth in this agreement, and not for any other

18 reason.

19 DocuSigned by:

[signature]

20 MICHAEL DAVID COBERG                9/10/2025
    Defendant                                  Date

21

22

23

24

25

26

27

28

Docusign Envelope ID: E3C6ACBA-B46A-4FDA-B88B-21E578F1302D

1

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

2      I am MICHAEL DAVID COBERG's attorney.  I have carefully and

3  thoroughly discussed every part of this agreement with my client.

4  Further, I have fully advised my client of his rights, of possible

5  pretrial motions that might be filed, of possible defenses that might

6  be asserted either prior to or at trial, of the sentencing factors

7  set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8  provisions, and of the consequences of entering into this agreement.

9  To my knowledge: no promises, inducements, or representations of any

10  kind have been made to my client other than those contained in this

11  agreement; no one has threatened or forced my client in any way to

12  enter into this agreement; my client's decision to enter into this

13  agreement is an informed and voluntary one; and the factual basis set

14  forth in this agreement is sufficient to support my client's entry of

15  guilty pleas pursuant to this agreement.

16

17

      /s/ Tom Yu                          09/10/2025
18  TOM YU                                Date
    Attorney for Defendant
19  MICHAEL DAVID COBERG

20

21

22

23

24

25

26

27

28

# EXHIBIT A

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>          v.<br><br>MICHAEL DAVID COBERG,<br><br>          Defendant. | No.<br><br>I N F O R M A T I O N<br><br>[18 U.S.C. § 1951(a): Conspiracy to Commit Extortion; 18 U.S.C. § 241: Conspiracy Against Rights; 18 U.S.C. §§ 924(d)(1) and 981(a)(1)(C), and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Acting United States Attorney charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Information:

1.    The Los Angeles County Sheriff's Department ("LASD") was a law enforcement agency within the Central District of California. Among other responsibilities, the LASD provided municipal police

1    services within Los Angeles County, California, through its thousands
2    of sworn deputies.

3        2.    Defendant MICHAEL DAVID COBERG, Christopher Michael Cadman
4    ("Cadman"), Eric Chase Saavedra ("Saavedra"), LASD Deputy 4, and LASD
5    Deputy 6 were sworn law enforcement officers employed by the LASD.
6    As LASD deputies, defendant, Cadman, LASD Deputy 4, and LASD Deputy 6
7    were subject to an oath of duty and rules of conduct.  This oath and
8    these rules prohibited LASD personnel from using their law
9    enforcement status and related equipment for personal use or for non-
10   legitimate law enforcement purposes.

11       3.    Defendant COBERG was a helicopter pilot assigned to LASD's
12   Aero Bureau.  As a helicopter pilot, defendant did not have an
13   investigatory assignment nor the duties of a detective.  Defendant
14   did not run confidential human sources.  Defendant was only a pilot
15   observer and a helicopter pilot.

16       4.    Defendant COBERG knew and understood that the Constitution
17   and laws of the United States protect the right to be free from
18   unreasonable searches and seizures and the right to be free from
19   deprivation of property without due process of law by one acting
20   under color of law.

21       5.    Adam Iza, also known as ("aka") "The Godfather," aka "Ahmed
22   Faiq," aka "Diego," aka "Diego Facebook," aka "Tony Brambilla," aka
23   "Leo" ("Iza"), was engaged in fraudulent marketing and cryptocurrency
24   schemes and resided in Los Angeles County and Orange County,
25   California, within the Central District of California.

26       6.    Saavedra owned and operated a company called Saavedra &
27   Associates LLC ("Saavedra & Associates") that provided private

28

2

1  security services for clients and often employed active LASD deputies

2  and law enforcement officers.

3       7.   Defendant COBERG at first worked one shift for Saavedra &

4  Associates as a private security guard, but then obtained his own

5  contract directly with Iza.  Defendant's contract with Iza allowed

6  defendant COBERG to work as a business partner and advisor as opposed

7  to working security shifts.  Defendant and Iza were planning to start

8  a business selling steroids.  Defendant received at least $20,000 per

9  month in payments from Iza for his services.

10      8.   These Introductory Allegations are incorporated into each

11  count of this Information.

COUNT ONE

[18 U.S.C. § 1951(a)]

A.   OBJECT OF THE CONSPIRACY

9.   Beginning on a date unknown and continuing through in or around December 2021, in Los Angeles County, within the Central District of California, and elsewhere, defendant MICHAEL DAVID COBERG, and others known and unknown to the Acting United States Attorney, conspired with each other to knowingly and intentionally interfere with commerce by extortion, in violation of Title 18, United States Code, Section 1951(a).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

10.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Iza would hire active LASD deputies, including defendant COBERG, to act as Iza's personal bodyguards and/or advisors, accompanying him 24 hours per day and seven days per week.

b.   Iza would pay large sums of money for the LASD deputies' services, including through cash payments and wire transfers.

c.   The LASD deputies often would carry firearms and/or brandish their LASD badges while accompanying Iza.

d.   Iza would inform the LASD deputies about people with whom he had personal and monetary disputes, and obtain the LASD deputies' assistance in gathering information about these individuals; obtaining property from these individuals; and/or retaliating against these individuals.

4

1          e.    Defendant COBERG would travel to Iza's residence to assist

2    investigate persons with whom Iza had personal and monetary disputes

3    and apply pressure on them.

4          f.    Defendant COBERG would inform victims of his status as an

5    active-duty law enforcement officer and pressure them to resolve the

6    financial dispute with his client Iza.

7          g.    Defendant COBERG would be in the room while Iza would

8    display firearms and video-record the transfer of funds to a bank

9    account Iza controlled.

10   C.    OVERT ACTS

11         11.   On or about the following dates, in furtherance of the

12   conspiracy, and to accomplish the object of the conspiracy, defendant

13   COBERG and Iza, and others known and unknown to the Acting United

14   States Attorney, committed and caused to be committed various overt

15   acts within the Central District of California, and elsewhere,

16   including the following:

17         Overt Act No. 1:    In October 2021, defendant COBERG and Iza

18   discussed a financial dispute between Iza, an Italian individual

19   Victim L.A., and Victim L.A.'s business partner.

20         Overt Act No. 2:    In October 2021, Iza told defendant COBERG

21   that Iza had been using a pseudonym to communicate with Victim L.A.,

22   and that Victim L.A. planned to travel to Los Angeles to discuss the

23   financial dispute.

24         Overt Act No. 3:    In October 2021, Iza told defendant COBERG

25   that when Victim L.A. arrived at Iza's residence in Bel Air,

26   defendant COBERG should apply pressure on Victim L.A. to resolve the

27   financial dispute.

28

1     <u>Overt Act No. 4:</u>    On or about October 19, 2021, defendant
2   COBERG accompanied other security guards in a black Escalade SUV to
3   pick up Victim L.A. from a hotel and drive Victim L.A. to Iza's
4   residence.

5     <u>Overt Act No. 5:</u>    On or about October 19, 2021, defendant
6   COBERG escorted Victim L.A. into Iza's office in Iza's residence.
7   Inside the office, Iza placed a firearm on the desk.  Iza also
8   displayed an assault rifle, which was placed on the ground near the
9   desk.

10    <u>Overt Act No. 6:</u>    On or about October 19, 2021, while inside
11  the office, defendant COBERG questioned Victim L.A. about the
12  financial dispute and the location of Victim L.A.'s business partner.
13  Defendant COBERG acted as an investigator and told Victim L.A. that
14  he was an active-duty law enforcement officer.

15    <u>Overt Act No. 7:</u>    On or about October 19, 2021, while
16  defendant COBERG was inside the office, Iza demanded that Victim L.A.
17  transfer funds to a bank account that Iza controlled.

18    <u>Overt Act No. 8:</u>    On or about October 19, 2021, while
19  defendant COBERG was inside the office, Iza recorded a video of
20  Victim L.A. transferring the entire balance of Victim L.A.'s Bank of
21  America account ($127,000) to a bank account that Iza controlled.

22    <u>Overt Act No. 9:</u>    On or about October 19, 2021, following the
23  wire transfer, while in defendant COBERG's presence, Iza caused his
24  security guards to take possession of Victim L.A.'s passport and
25  directed security guards to drive Victim L.A. back to the hotel.

26    <u>Overt Act No. 10:</u>    On or about October 20, 2021, Iza caused his
27  security guards to pick up Victim L.A. from the hotel and drive
28  Victim L.A. back to Iza's residence.

1    <u>Overt Act No. 11</u>:    On or about October 20, 2021, defendant
2    COBERG continued to question Victim L.A. about the financial dispute
3    and the location of Victim L.A.'s business partner.

4    <u>Overt Act No. 12</u>:    On or about October 20, 2021, defendant
5    COBERG escorted Victim L.A. and Iza to a shooting range in the
6    basement of the residence.    Defendant COBERG left Iza and Victim L.A.
7    alone in the shooting range.

8    <u>Overt Act No. 13</u>:    On or about October 20, 2021, Iza held
9    Victim L.A. at gunpoint inside the shooting range.    Iza recorded two
10   videos of Victim L.A. in the shooting range, including one video in
11   which Iza held Victim L.A. at gunpoint and another in which Victim
12   L.A. was on the telephone crying.

13   <u>Overt Act No. 14</u>:    On or about October 20, 2021, Victim L.A.'s
14   business partner transferred additional funds to Iza.

15
16
17
18
19
20
21
22
23
24
25
26
27
28

7

1                                COUNT TWO

2                            [18 U.S.C. § 241]

3    A.   OBJECT OF THE CONSPIRACY

4         12.  Beginning on a date unknown to the Acting United States

5    Attorney and continuing through in or around June 2022, in Los

6    Angeles County, within the Central District of California, and

7    elsewhere, defendant MICHAEL DAVID COBERG, and others known and

8    unknown to the Acting United States Attorney, conspired and agreed

9    with each other to knowingly and intentionally injure, oppress,

10   threaten, and intimidate persons of the State of California, namely,

11   Victim R.C., in the free exercise and enjoyment of rights secured to

12   them by the Constitution and laws of the United States, that is, the

13   right to be free from unreasonable searches and seizures and the

14   right to be free from deprivation of property without due process of

15   law by one acting under color of law.

16   B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE

17        ACCOMPLISHED

18        13.  The object of the conspiracy was to be accomplished, in

19   substance, as follows:

20        a.   Iza would hire active LASD deputies, including defendant

21   COBERG, to act as Iza's personal bodyguards, accompanying him twenty-

22   four hours per day and seven days per week.

23        b.   Iza would pay large sums of money for the LASD deputies'

24   services, including through cash payments and wire transfers to

25   Deputy Saavedra and/or Saavedra & Associates.

26        c.   Iza would pay $20,000 per month directly to defendant

27   COBERG for his services as a security guard and business partner in a

28   steroid business venture.

                                    8

1    d.    The LASD deputies often would carry firearms and/or display

2  their LASD badges while accompanying Iza.

3    e.    Iza would inform the LASD deputies about individuals with

4  whom he had personal and/or monetary disputes and obtain the LASD

5  deputies' assistance in gathering information about those

6  individuals; obtaining property from them; and/or retaliating against

7  them.

8    f.    Iza, the LASD deputies, and their associates would plan to

9  steal, attempt to steal, and steal property from individuals with

10  whom Iza had disputes and/or their associates.

11    g.    Iza, the LASD deputies, and their associates would

12  intimidate, harass, and threaten individuals with whom Iza had

13  disputes and/or their associates, including by threatening violence

14  and by using confidential information that the LASD deputies obtained

15  in their official capacities.

16  3.    OVERT ACTS

17    14.    On or about the following dates, in furtherance of the

18  conspiracy, and to accomplish the object of the conspiracy, defendant

19  COBERG, and others known and unknown to the Acting United States

20  Attorney, committed and caused to be committed various overt acts

21  within the Central District of California, and elsewhere, including

22  the following:

23    Overt Act No. 1:    In or around August 2021, Iza began

24  communicating regularly with Co-Conspirator 2, Victim R.C.'s former

25  romantic partner,  who attended a party thrown by Victim R.C., Iza's

26  party planner, at Iza's residence on August 14, 2021.

27    Overt Act No. 2:    In or around August 2021, defendant COBERG

28  learned that LASD Deputy 6 and Cadman had recently held Victim R.C.

1  at gunpoint in Iza's residence after which Iza forced Victim R.C. to

2  transfer money to Iza.

3      Overt Act No. 3:    In or around September 2021, Iza, Co-

4  Conspirator 2, and defendant COBERG discussed and agreed to a plan

5  whereby they would cause Victim R.C. to be arrested with illegal

6  drugs by law enforcement officers.

7      Overt Act No. 4:    In or around late September 2021, during a

8  meeting between Iza, Co-Conspirator 2, and defendant COBERG at Iza's

9  residence, Co-Conspirator 2 contacted Victim R.C., who was in

10  Florida, and encouraged Victim R.C. to return to Los Angeles.

11     Overt Act No. 5:    In or around late September 2021, Co-

12  Conspirator 2, with Iza's assistance, purchased a ticket for Victim

13  R.C. to travel from Florida to Los Angeles, where Iza, Co-Conspirator

14  2, and defendant COBERG planned to have Victim R.C. arrested with

15  illegal drugs, which defendant COBERG emphasized was important to

16  their plan.

17     Overt Act No. 6:    On September 26, 2021, Iza met Co-

18  Conspirator 2 and supplied Co-Conspirator 2 approximately $800 for

19  Victim R.C. to use to purchase illegal drugs.

20     Overt Act No. 7:    On September 27, 2021, defendant COBERG

21  communicated with Cadman and LASD Deputy 4, who was on patrol in

22  Paramount, California, and arranged for LASD Deputy 4 to conduct a

23  traffic stop of Co-Conspirator 2's vehicle in Paramount and to arrest

24  Victim R.C.

25     Overt Act No. 8:    On September 27, 2021, Co-Conspirator 2

26  drove Victim R.C. to a prearranged location in Paramount that Iza

27  supplied to Co-Conspirator 2.

28

1    <u>Overt Act No. 9:</u>    On September 27, 2021, Iza and defendant
2  COBERG traveled together to the prearranged location in Paramount to
3  observe Victim R.C.'s arrest.

4    <u>Overt Act No. 10:</u>    On September 27, 2021, LASD Deputy 4
5  conducted a traffic stop of Co-Conspirator 2's vehicle at the
6  prearranged location in Paramount.

7    <u>Overt Act No. 11:</u>    On September 27, 2021, Iza and/or defendant
8  COBERG took photographs and videos of Victim R.C.'s arrest from
9  inside their vehicle.

10    <u>Overt Act No. 12:</u>    On September 27, 2021, during the traffic
11  stop, LASD Deputy 4 searched Co-Conspirator 2's vehicle and found a
12  plastic bag containing suspected cocaine under the front passenger
13  seat, where Victim R.C. had been seated, and two bags containing
14  psilocybin mushrooms inside Victim R.C.'s backpack.

15    <u>Overt Act No. 13:</u>    On September 27, 2021, based on the traffic
16  stop and subsequent search of Co-Conspirator 2's vehicle, LASD Deputy
17  4 caused Victim R.C. to be charged with transportation of a
18  controlled substance, and transported Victim R.C. to a local jail.

19    <u>Overt Act No. 14:</u>    On September 27, 2021, defendant COBERG sent
20  a text message to Cadman thanking Cadman for facilitating the traffic
21  stop and stating that "the kid enjoyed it," referring to Iza.

22    <u>Overt Act No. 15:</u>    On October 1, 2021, Iza sent photographs and
23  text messages to be sent to Victim R.C., including a photograph of
24  Victim R.C.'s arrest in progress, a message stating that "[f]or a
25  drug dealer, you fucked with the wrong people", a photograph of
26  Victim R.C.'s booking photograph, and a message stating "[w]orthless
27  loser.  Congrats on the drug felony arrest."

28

1                          FORFEITURE ALLEGATION ONE

2        [18 U.S.C. §§ 981(a)(1)(C), 924(d)(1) and 28 U.S.C. § 2461(c)]

3        1.   Pursuant to Rule 32.2 of the Federal Rules of Criminal

4   Procedure, notice is hereby given that the United States of America

5   will seek forfeiture as part of any sentence, pursuant to Title 18,

6   United States Code, Sections 981(a)(1)(C), 924(d)(1), and Title 28,

7   United States Code, Section 2461(c), in the event of the defendant's

8   conviction of the offense set forth in Count One of this Information.

9        2.   The defendant, if so convicted, shall forfeit to the United

10  States of America the following:

11            (a)  All right, title, and interest in any and all

12  property, real or personal, constituting, or derived from, any

13  proceeds traceable to any of the offenses;

14            (b)  All right, title, and interest in any firearm or

15  ammunition involved in or used in any such offense and

16            (c)  To the extent such property is not available for

17  forfeiture, a sum of money equal to the total value of the property

18  described in subparagraphs (a) and (b).

19       3.   Pursuant to Title 21, United States Code, Section 853(p),

20  as incorporated by Title 28, United States Code, Section 2461(c), the

21  defendant, if so convicted, shall forfeit substitute property, up to

22  the value of the property described in the preceding paragraph if, as

23  the result of any act or omission of the defendant, the property

24  described in the preceding paragraph or any portion thereof (a)

25  cannot be located upon the exercise of due diligence; (b) has been

26  transferred, sold to, or deposited with a third party; (c) has been

27  placed beyond the jurisdiction of the court; (d) has been

28

                                    12

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1), and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offense set forth in Count Two of this Information.

2.    If so convicted, defendant shall forfeit to the United States of America the following:

(a)    All right, title, and interest in any firearm or ammunition involved in or used in any such offense; and

(b)    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the convicted defendant shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

//

14

1  substantially diminished in value; or (e) has been commingled with

2  other property that cannot be divided without difficulty.

                                BILAL A. ESSAYLI
                                Acting United States Attorney


                                CHRISTINA T. SHAY
                                Assistant United States Attorney
                                Chief, Criminal Division

                                THOMAS F. RYBARCZYK
                                Assistant United States Attorney
                                Chief, Public Corruption and Civil
                                Rights Section

                                MAXWELL K. COLL
                                Assistant United States Attorney
                                Terrorism and Export Crimes
                                Section